Waymon GREER, also known as Raymond Greer, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 10, 1976.

Certiorari Denied by Supreme Court
July 26, 1976.

John K. Kyle, Asst. Public Defender, Nashville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Edward M. Yarbrough, Asst. Dist. Atty. Gen., Nashville, for defendant-in-error.

## OPINION

DAUGHTREY, Judge.

The defendant, Waymon Greer, also known as Raymond Greer, was convicted in the Davidson County Criminal Court of burglary first degree and rape. The jury assessed punishments of five to ten years incarceration on the burglary conviction, and twenty years incarceration on the rape conviction, which sentences were ordered by the trial judge to be served consecutively.

On appeal the defendant presents two issues for our determination: (1) the sufficiency of the evidence to support the verdict, and (2) the failure of the trial judge to order the sentences to run concurrently. After a careful review of the record, we find no merit in either of these contentions and accordingly we affirm both convictions.

The evidence at trial was that the defendant had been the victim's next door neighbor for some 20 or more years. The victim at the time of the offense was 90 years old, paralyzed by a stroke, and confined to a wheelchair. Her mental state was described as alert, and her ability to recognize and identify the defendant was unimpeached at the trial. On the evening of June 18, 1974 sometime before dark, she was put to bed by the woman caretaker who came to the victim's home several times a day to feed and otherwise care for her. This witness testified that she left the victim in bed, with all the outside doors locked, and the light in the room next to the victim's bedroom turned on and shining into the bedroom. She returned at 7:00 A.M. the next morning to find the victim lying face down, immobilized on the bedroom floor. The room was in disarray, and the bed and the victim's nightgown were covered with blood. The victim's radio, television, and clock had been unplugged, and according to police testimony, the cords wrapped around them in a manner suggesting imminent transportation. The electric clock had stopped at 9:50. Investigation showed that a lock had been forced off the outside of a rear door, through which entry presumably had been gained.

The caretaker asked the victim what had happened and was immediately told, "Raymond broke in on me . . . he come in on me last night." The victim was suffering abdominal pain and bleeding, and was transported by ambulance to the hospital. There she told her niece that she had been raped by the defendant. Medical examination revealed several external cuts, as well as a tear on the lower vaginal wall and another near the cervix. Two medical doctors testified that this genital trauma was consistent with a sexual assault.

The victim testified at trial, positively identifying the defendant as her assailant. She related that she had gone to sleep and awoke to find him in her room. Asked whether the defendant "actually ha(d) intercourse with you," the victim replied in the affirmative, testifying that he had raped her twice, once on the bed and again on the floor. She said that she thought it was dark outside at the time.

To rebut this evidence, the defendant took the stand in his own behalf, and presented an alibi defense. He testified that he was at home the entire evening, spending the night in bed with the woman with whom he was living at the time. The defendant's cohabitant then testified, corroborating his alibi. A second witness, the defendant's grandmother, owned the house in which the defendant lived. She testified she was awakened in the night by a noise next door, and called to the defendant about it. However, she did not testify to seeing the defendant at any time during the night.

■ The defendant's evidentiary attack is focused on two points. First, the defendant insists that the evidence generally fails to support the verdict, and specifically fails to establish penetration, a necessary element of the crime of rape under T.C.A. § 39–3701. Given the testimony of the victim, the objective medical evidence, and the expert testimony of the physicians, we find this contention wholly without merit.

Secondly, the defendant complains that the evidence fails to establish that the breaking and entering was accomplished in the nighttime, and also for this reason assigns as error the trial court's failure to direct a verdict of not guilty to the charge of first degree burglary.

■ T.C.A. § 39–901 specifies that the offense must be done "by night" in order to constitute burglary in the first degree, making nighttime entry an essential element of the crime. Ledger v. State, 199 Tenn. 155, 285 S.W.2d 130 (1955). Whether or not this element has been established beyond a reasonable doubt is a question of fact to be determined by the jury. Once the factual issue has been decided by the jury in the State's favor, it then becomes the defendant's burden on appeal to establish the contrary by a preponderance of the evidence. McBee v. State, 213 Tenn. 15, 372 S.W.2d 173 (1963). We think the evidence here preponderates against the defendant, and, furthermore, that the trial court was not in error in refusing to direct a verdict and in allowing the evidence on this question to go to the jury. See, Hill v. State, 4 Tenn.Cr.App. 325, 337, 470 S.W.2d 853 (1971), citing Ridley v. Spence, 61 Tenn. App. 571, 456 S.W.2d 846 (1970), and construing T.C.A. § 40–2529. We therefore find no ground for reversal on this assignment.

In his brief the defendant next assigns as error the consecutive sentences ordered by the trial judge, arguing initially that the indictment is worded so as to make rape a necessary element of the offense of burglary, thus precluding separate convictions carrying individual sentences. The indictment charges in the first count that the defendant:

. . . heretofore, to wit, on the _____ day of June, 1974, and prior to the return of this indictment, in the County and State aforesaid, unlawfully, feloniously, forcibly and violently, did break and enter, in the nighttime, the dwelling house of another, to wit: one [victim's name] with the unlawful and felonious intent then and there and therein to commit a felony, to wit: Rape, and did then and there unlawfully, feloniously and violently, make an assault upon the body of [the

858

victim], a female, and her the said [victim], then and there unlawfully, feloniously, violently, and against her will, did ravish and carnally know, against the peace and dignity of the State of Tennessee.

The second count of the indictment charges that the defendant:

. . . unlawfully, feloniously, and violently did make an assault upon the body of [the same victim], a female, and her the said [victim] then and there unlawfully, feloniously, violently, and against her will, did ravish and carnally know, against the peace and dignity of the State of Tennessee.

■ Because the second count adequately charges the defendant with rape, the first count is not susceptible to attack on the ground of duplicity, and no objection was entered by the defendant prior to trial on the ground of multiplicity. We think, therefore, that the language in the first count which on its face charges the defendant with rape can be considered mere surplusage, and we fail to find any prejudice to the defendant arising from it. *See also* T.C.A. § 39–907.

■ The defendant also complains of the consecutive punishments inflicted on the ground that only one transaction involving one criminal intent has been charged and proven, with the result that only one punishment is legally appropriate, citing *Patmore v. State,* 152 Tenn. 281, 277 S.W. 892 (1925). But we think this case is controlled by *State v. Black,* 524 S.W.2d 913 (Tenn. 1975), in which the Tennessee Supreme Court in effect rejected the so-called "same transaction" test in determining the identity or separability of multiple offenses charged in the same indictment or joined at the same trial. In *Black* the court reaffirmed its holding in *Duchac v. State,* 505 S.W.2d 237 (Tenn.1973) and adopted the United States Supreme Court's rationale in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the standards laid down in those cases, there were two separate offenses charged and proven under the facts in the case

before us, susceptible to two punishments which the trial court could, in its discretion, order to be served consecutively. *Wooten v. State,* 477 S.W.2d 767 (Tenn.Cr.App. 1971).

The *Black* court was reluctant to adopt an inflexible test for determining the existence of separate offenses, saying:

We do not find the formulation of the various "tests" into catch words, such as "same transaction" or "same evidence" to be particularly helpful. As previously stated, each case requires close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances. 524 S.W.2d at 919.

The court then went on to extract certain factors from *Blockburger* and *Duchac* which it deemed relevant to a correct determination of this issue: (1) whether the episode or transaction constitutes a violation of two distinct statutory provisions; (2) whether either of the offenses is a necessarily included offense of the other; (3) whether each of the offenses requires proof of a different element; and (4) whether each requires proof of an additional fact which the other does not. 524 S.W.2d at 919–20. A distillation of these factors produces essentially the "same evidence" standard. *Id.* at 925 (Henry, J., dissenting).

Applied to the case before us, these factors plainly indicate the existence of separate offenses. Burglary in the first degree (T.C.A. § 39–901) and rape (T.C.A. § 39–3701) are covered by distinct statutory provisions; neither is an included offense of the other (despite the rather clumsy drafting of the first count of the indictment in this case, which we have found to result in nonprejudicial surplusage); the two offenses involve proof of different elements; and each requires proof of additional facts not necessary to establish the other.

Only one matter gives us trouble in reaching the conclusion we reach here under *Black,* and that is the possible controlling effect of this Court's decision in *Walton v. State,* 1 Tenn.Cr.App. 668, 448 S.W.2d 690 (1969). In *Walton* the defendant was

charged and convicted of both burglary and assault with intent to commit rape. The "intended" felony charged in the burglary count was rape.

The *Walton* court held that both convictions could not stand because they constituted "one single continuing criminal act, inspired by the same criminal intent essential to both, and are but one offense." *Id.* at 696. The court distinguished *Walton* from *Harris v. State,* 206 Tenn. 276, 332 S.W.2d 675 (1960) on the ground that the "intended" felony charged in the burglary count in *Harris* was larceny, while the second felony charged and actually proved was assault with intent to commit rape, which charges "do not constitute the same offense, but are entirely [separate] and unconnected offenses." [1] *Id.* at 680.

The "single criminal act—single criminal intent" rationale exhibited in *Walton* was used in a good many Tennessee cases prior to *Black.* Indeed, the *Black* opinion analyzes at length the two separate and largely inconsistent lines of cases, the existence of which persuaded the *Black* court to try and resolve the apparent conflict in Tennessee law between the "same evidence" and the "same transaction" tests.

*Walton* and the other "same transaction—same intent" cases culminated in

*Acres v. State,* 484 S.W.2d 534 (Tenn.1972), which held that an accused in a felony-murder case could not be convicted both of first degree murder and of the felony used to supply the requisite intent supporting the murder conviction. But the same court which decided *Acres* also ruled a year later in *Duchac v. State,* that "the majority rule and clearly the rule in Tennessee is that the 'same transaction' test is not the law, rather the proper test is directed to the identity of the offense and has been called the 'same evidence' test," 505 S.W.2d 237, 239 (Tenn. 1973) citing *Harris v. State, supra,* and *Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815 (1959). Asked to elect between the *Acres*-same transaction/same intent approach and the *Duchac*-same evidence test, the *Black* court chose to confine *Acres* to its facts, *i. e.,* the felony-murder situation, and reaffirmed *Duchac.* In so doing, the court extensively reviewed those cases cited in *Acres* in support of the "same transaction" rule. Among these was *Walton* and *Patmore v. State, supra,* relied on by the defendant here. None of the cases cited in *Acres* and reviewed in *Black* involved felony-murder charges, except *Acres* itself. Thus we think in confining *Acres* to its facts, the *Black* court overruled *sub silentio* the non-felony murder cases cited in *Acres.* [2]

1. The court in *Walton* may have read more into *Harris* than that opinion will bear. In *Harris* the defendant had previously been convicted of burglary, and was being tried for the assault with intent to commit rape which allegedly followed the burglary. No where in the *Harris* opinion does it say what specific intent the burglary indictment had alleged, although it does appear that Harris confessed to breaking in with the intent to steal the victim's money. 332 S.W.2d at 679. The *Walton* court may have overlooked the following language in the *Harris* opinion:

Whether the defendant intended, when he entered Roxie Logan's home that night, to obtain money or commit the offense of burglary (rape?), the only reasonable conclusion that can be reached, from the undisputed facts as to what took place in the room thereafter, is that *he also had an intent to rape her, formed either before he broke into the house,* or after he gained entrance and saw her on the bed, and that he did attempt to do so. *Id.* at 678 (emphasis supplied).

Thus it appears that Harris may have had a single continuing intent to rape throughout the "transaction," a fact which the *Harris* court did not find to be outcome determinative. The *Harris* case therefore seems less distinguishable from the facts in *Walton* than the *Walton* court held it to be.

2. In an opinion released the same day as *Black,* the Tennessee Supreme Court upheld separate convictions for armed robbery and felonious escape growing out of a single episode in which the defendant robbed a state employee of the keys to a pick-up truck and escaped the penal farm in the truck. *State v. Scates,* 524 S.W.2d 929 (Tenn.1975). The defendant argued that the proof showed the existence of a single continuous intent to escape, and that both convictions could not stand, under the authority of *Young v. State,* 487 S.W.2d 305 (Tenn.1972). As it did in *Black,* the Tennessee Supreme Court refused to overrule *Young* expressly even though the facts in *Young* were virtually identical to those in *Scates.* But the court

Furthermore, the same court has since explicitly overruled *Acres*. *State v. Briggs*, 533 S.W.2d 290 (Tenn.1976). Thus we conclude that *Walton* is no longer good law under recent Tennessee decisions. It follows that it is not controlling in the case before us.

▆ We think this result is sound. The law in the overwhelming majority of states has always permitted convictions of both burglary and the "intended" felony, if the proof showed the commission of the second offense. *See, e. g., Morgan v. Devine*, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1914); *Dunaway v. United States*, 170 F.2d 11 (10th Cir. 1948); *Williams v. State*, 205 Md. 470, 109 A.2d 89 (1954); *State v. Byra*, 128 N.J.L. 429, 26 A.2d 702 (1942), *aff'd per curiam*, 129 N.J.L. 384, 30 A.2d 49 (1943), *cert. denied*, 324 U.S. 884, 65 S.Ct. 1025, 89 L.Ed. 1434 (1945); *Com. ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941); *Punchard v. State*, 124 Tex.Cr.R. 101, 61 S.W.2d 495 (1933); *Whitted v. State*, 187 Ark. 285, 59 S.W.2d 597 (1933); *People v. Andrae*, 305 Ill. 530, 137 N.E. 496 (1922); *State v. Broderick*, 191 Iowa 717, 183 N.W. 310 (1921); *Wilson v. State*, 24 Conn. 57 (1855).[3] The reason behind the majority rule has been clear at least as far back as 1551, when Lord Coke defined a burglar as:

a felon that in the night breaketh and entreth into a mansion house of another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed or not.[4]

Thus the crime of burglary is considered completed when the entry is executed with a concomitant intent to commit a felony inside the building entered. *Duchac v. State, supra,* at 239–40. It follows that a second crime committed after the burglarious act is completed constitutes a separate crime, susceptible of a separate conviction and punishment. Thus the trial judge in this case was not precluded as a matter of law from the imposition of consecutive sentences based on the verdict of the jury.

The judgment of the court below is affirmed.

WALKER, P. J., and RUSSELL, J., concur.

---

likewise confined *Young* to its facts, saying that to do otherwise "would permit the felonious confiscation of the personal property of others, under threat of deadly force, to go unpunished *under the guise that there was no 'separate intent'* except to use that property as a part of an intent to escape, or as a part of one 'continuous transaction.' " 524 S.W.2d at 932 (emphasis supplied).

3. *See also* Note, *A Rationale of the Law of Burglary,* 51 Col.L.Rev. 1009 (1951), in which the author cites Tennessee only as holding contrary to the majority rule. *Id.* at note 4. The earliest case expressing the Tennessee rule appears to be *State v. DeGraffenreid,* 68 Tenn. 287 (1878); the most frequently cited is *Cronan v. State,* 113 Tenn. 539, 82 S.W. 477 (1904). The *Cronan* case was cited as support in *Acres* and also reviewed in *Black,* 524 S.W.2d at 915. Cf. *Petree v. State,* 530 S.W.2d 90 (Tenn.Cr. App.1975).

4. 3 E. Coke, *Institutes* 63.