Ben Richard MAPLES, Petitioner,

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

April 24, 1978.

Jerry K. Galyon, Sevierville, for petitioner.

Brooks McLemore, Jr., Atty. Gen., Henry E. Hildebrand, III, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for respondent.

## OPINION

HARBISON, Justice.

Petitioner was fined for contempt as the result of admittedly fraudulent divorce proceedings which he instituted in a chancery court and in which he gave false testimony. Subsequently he was convicted of the statutory offense of perjury for that false testimony. His principal insistence on appeal is that the criminal prosecution was barred on principles of double jeopardy. The Court of Criminal Appeals affirmed the conviction. We granted certiorari to give further consideration to that question and also to the manner in which petitioner's petition for probation was handled in the trial court.

On October 17, 1974, petitioner instituted a divorce action in Union County, making sworn allegations that his wife was a resident of that county. She filed an answer admitting that and other allegations. Four days after the complaint was filed, there was an oral hearing in which petitioner testified that his wife was a resident of Union County. He was awarded a divorce, and the court approved a property settlement, which stated that petitioner's wife did reside in that county.

Subsequently, petitioner's wife died, and in September 1975 he filed a petition under Rule 60, Tennessee Rules of Civil Procedure, to set aside the divorce decree which he had obtained under the foregoing circumstances. He testified at the hearing on that motion that he had sworn falsely to the Chancellor in the previous proceedings, and it was made to appear at that time that neither petitioner nor his wife had ever at any time resided in Union County. Although the Chancellor granted petitioner the relief which he sought, and set aside the divorce decree as having been fraudulently obtained, he nevertheless fined the petitioner fifty dollars for contempt of court and further directed that an investigation be made as to whether criminal proceedings should not be instituted against petitioner. Unfortunately, the decree which the Chancellor entered did not specify the particular conduct of petitioner which was found to be contemptuous, nor the exact statutory pro-

vision upon which the Court relied. He could have cited the petitioner for the filing of a fraudulent divorce proceeding in the Chancery Court, or the citation could have been for the false testimony given at the divorce hearing or for the procuring and obtaining of the final divorce decree.

The record is clear that the indictment on the perjury charge was based upon the 'false testimony given by petitioner at the divorce hearing on October 21, 1974.

While the record is not free from uncertainty in this regard, the Court of Criminal Appeals treated the contempt citation as having been based upon the same conduct as the perjury charge, that is, the oral testimony given by petitioner at the divorce hearing. It nevertheless concluded that the prosecution was not barred by the double jeopardy provisions of the state or federal constitutions, and, in the opinion of the majority, that conclusion was correct.

The statutes under which petitioner apparently was cited for contempt provide:

"The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

"(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice."

  *  *  *  *  *  *

"(4) Abuse of, or unlawful interference with, the process or proceedings of the court." T.C.A. § 23–902.

The statutory crime of perjury is defined as follows:

"Whoever [upon oath or affirmation] . . . shall upon such oath or affirmation, swear or affirm willfully, corruptly and falsely touching a matter material to the point in question, shall be guilty of perjury, and on conviction shall be imprisoned in the penitentiary for not less than one (1) year nor more than five (5) years." T.C.A. § 39–3301.

In the opinion of the majority, even if it is assumed that the contempt citation rested upon the false testimony given at the divorce trial, nevertheless there has not been demonstrated a sufficient identity between this summary contempt penalty and the statutory offense of perjury to establish a defense of double jeopardy. The purposes of the general statutes authorizing a court to punish for abuse of its processes and those creating and prescribing punishment for various indictable offenses are so entirely different, and designed to accomplish such wholly different purposes, that we do not find any violation of constitutional principles in imposing punishment upon an offender under both sets of statutes.

There can be no question that the punishment given for contempt was summary in nature and that it was imposed immediately by the Chancellor upon his learning of the facts. The record does not present a case of a formal citation for contempt or a show-cause order and trial thereon.

In a few cases punishments for contempt imposed following such formal citations have been held to preclude criminal prosecutions for statutory crimes based on the same conduct. Thus in the case of *People v. Gray*, 36 Ill.App.3d 720, 344 N.E.2d 683 (1976), the defendant has been enjoined from going about or molesting his wife in a divorce proceeding. He violated this order, struck and then shot his wife, and was cited for contempt of court. There was a formal trial and hearing, following which he was found to be in contempt of the divorce court and sentenced to serve six months in jail.

Thereafter the defendant was indicted for aggravated battery and attempted murder of his wife. The Illinois Court of Appeals held that under those circumstances the contempt citation did prevent the criminal prosecution. It should be noted in that case, however, that the contempt did not occur in the presence of the court, nor was the punishment summarily imposed, but followed a formal citation and trial.

In that case the court recognized and distinguished several federal cases where summary punishment for contempt was

held not to preclude later criminal prosecution based upon the same conduct. Illustrative of these cases is *U. S. v. Mirra*, 220 F.Supp. 361 (S.D.N.Y.1963). In that case an obstreperous defendant, during the course of a long criminal trial, stood up in the courtroom, took the witness chair on which he was sitting, and hurled it at the United States Attorney. He threw the chair some fifteen feet, and it struck the jury rail about three feet from the lectern where the attorney was standing. For this disregard for the dignity and decorum of the court, the defendant was summarily held in contempt and sentenced to one year in prison. Thereafter he was indicted for the use of force in assaulting or interfering with a federal official in the performance of his duties. The defense of double jeopardy was interposed but was overruled in a careful and thoughtful opinion by the Court, in which the following observation was made:

> "Let us consider by way of illustration the consequences of upholding Mirra's claim in the context of an extreme but not wholly improbable case that could have arisen after, and out of, Mirra's contempt conviction. Assume that Mirra's projectile had received more accurate a propulsion and had scored on its intended target—the Assistant United States Attorney. And assume further the grizzly and morbid fact that the Assistant United States Attorney had sustained an injury which ultimately proved fatal. To sustain Mirra's claim would, in effect, grant a summary contemnor immunity from a homicide prosecution—an unconscionable result. Merely to state the case suffices to reveal what must perforce to be the answer to Mirra's theory." 220 F.Supp. at 366.

*See also U. S. v. Rollerson*, 308 F.Supp. 1014 (D.D.C.1970), *aff'd*, 145 U.S.App.D.C. 338, 449 F.2d 1000 (1971); *O'Malley v. U. S.*, 128 F.2d 676 (8th Cir. 1942). These cases stress that in summary contempt cases, followed by later criminal proceedings, the accused is not subjected to the successive trials and prosecutions forbidden under the double jeopardy clause.

The elements necessary to sustain a conviction for the statutory crime of perjury are wholly different and distinct from those necessary to justify imposition of a contempt citation under T.C.A. § 23–902. In order for perjury to amount to contempt, there must be more than false swearing. There has to be an additional element of obstruction of justice or interference with the processes of the court. For example, false swearing could occur in a deposition, in an answer to an interrogatory, in an oath to a deed, or in some other context which might justify a conviction for perjury, but which would not necessarily amount to a contempt of court.

In the case of *Ex parte Hudgings*, 249 U.S. 378, 383–84, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919), the Supreme Court of the United States observed:

> "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt, there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty. . . . It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing."

*See also In re Michael*, 326 U.S. 224, 227–28, 66 S.Ct. 78, 80, 90 L.Ed. 30 (1945), where the Court expressly held that a witness could not be punished for contempt solely because he had committed perjury. The Court said:

"All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact-finding tribunal must hear both truthful and false witnesses."

In the case of *United States v. Essex*, 407 F.2d 214, 217 (6th Cir. 1969), it was stated that:

"It is now well beyond dispute that false testimony alone will not amount to contempt of court."

In that case the filing of a false or perjured affidavit was held insufficient to sustain an obstruction of justice charge. After discussing the case cited above the Court said:

"[T]he above . . . cases stand firmly for the rule that perjury alone lacks the element of obstruction which is the essence of contempt." 407 F.2d at 218.

*See generally* 17 Am.Jur.2d *Contempt* § 33 (1964), where it is stated:

"Making a false statement under oath may constitute contempt, notwithstanding that the conduct may also be a crime, such as perjury or false swearing."

*See also* Annot. 89 A.L.R.2d 1258 (1963).

Although the matter has not been considered in great detail in previous reported opinions, the courts of this state have consistently held that the imposition of a contempt citation does not preclude a later criminal prosecution. In the case of *Ricketts v. State*, 111 Tenn. 380, 77 S.W. 1076 (1903), it was emphasized that the offenses of contempt and subornation of perjury are

". . . created upon different principles, for different purposes, are tried and punished differently, and a conviction or acquittal of one is no bar in a prosecution for the other." 111 Tenn. at 382–83, 77 S.W. at 1077.

*See also Osborn v. State*, 160 Tenn. 599, 28 S.W.2d 49 (1930); *Underwood v. State*, 187 Tenn. 530, 216 S.W.2d 26 (1948); *Barrowman v. State*, 214 Tenn. 408, 381 S.W.2d 251 (1964).

We find no reason to depart from the earlier cases in this state, nor are we persuaded that the series of *Colombo* cases, relied upon by petitioner, require that result.[1] Those cases involved a series of separate contempt citations for the same conduct, which we regard as a different problem from that presented here.

Further, we do not believe that the case of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) is inconsistent with the result reached here. In that case the same conduct was held to violate two different statutes, serving two different purposes, and punishment for violation of both statutes was expressly held not to violate the double jeopardy clause. Specifically, there was a sale of contraband drugs without a written order from the purchaser and not in the original package. This one transaction was held to violate both a federal statute prohibiting sales other than in the original package and a statute prohibiting a sale without a written purchase order. The Court there noted the distinctions in the elements of the offenses and in the proof necessary to establish each, and it affirmed both convictions based upon the single drug sale.

In the case of *State v. Black*, 524 S.W.2d 913 (Tenn.1975), the Court relied upon and followed the *Blockburger* decision, and pointed out that in each case where a double jeopardy issue is presented for violation of two separate statutory provisions, a close and careful analysis of the elements of each statutory offense and of the proof necessary to establish each is required.

1. *People v. Colombo*, 25 N.Y.2d 641, 306 N.Y. S.2d 258, 254 N.E.2d 340 (1969), *vacated sub nom. Colombo v. New York*, 400 U.S. 16, 91 S.Ct. 99, 27 L.Ed.2d 16 (1970); *Colombo v.* *New York*, 405 U.S. 9, 92 S.Ct. 756, 30 L.Ed.2d 762 (1972); *People v. Colombo*, 31 N.Y.2d 947, 341 N.Y.S.2d 97, 293 N.E.2d 247 (1972).

The summary power to punish for contempt committed in the presence of the court is quite different from that exercised in cases of so-called "indirect" contempt. It is a power which in our opinion, is indispensable to the orderly dispatch and conduct of the business of the courts. Its use is not intended to, nor should it, immunize the contemnor from prosecution for violation of specific provisions of the criminal code. Certainly, in the instant case, the action of the Chancellor was not so intended, nor do we believe that it had that legal effect.

We have considered the other assignments of error filed by the petitioner and find them to be without merit, except an assignment dealing with the manner in which his petition for probation was disposed of in the trial court. It was apparently disposed of without a separate hearing, and even before a formal petition for probation had been filed. We find this to be irregular, and we remand the case to the trial court with directions that a proper hearing be held upon the petition for probation which has been filed, and any proper amendments thereto, and the entry of appropriate findings of fact and conclusions of law thereon. With this modification, the judgment of the Court of Criminal Appeals is affirmed at the cost of petitioner.

COOPER, FONES and BROCK, JJ., concur.

HENRY, C. J., dissents.

HENRY, Chief Justice, dissenting.

I respectfully dissent.

On October 17, 1974, petitioner, a resident of Pigeon Forge, Sevier County, filed his sworn complaint in the Chancery Court at Maynardsville, in Union County, seeking an absolute divorce. Among other sworn allegations were these:

a. that his wife was a resident of Union County, Tennessee;

b. that he and his wife "have been separated since October 1, 1974, and have not lived together since that time."

I digress to point out that in point of fact each of these allegations was willfully, knowingly and flagrantly false.

On the following day, October 18, 1974, petitioner's wife filed her answer admitting the statistical information contained in the complaint. This, of course, constituted a direct admission that she was a resident of Union County. Her answer contains no denial of the allegation pertaining to the separation of the parties, nor does it contain a general denial.

The hearing was conducted on October 21, 1974; and, by decree entered December 2, 1974, petitioner was granted a divorce. This decree approved and incorporated a property settlement agreement executed on October 16, 1974, which, *inter alia,* set out that petitioner's wife, Freda S. Maples, was a resident of the "County of Union." At the hearing petitioner testified that his wife was a resident of Union County.

Freda S. Maples died on July 18, 1975, under circumstances not here pertinent and not fully disclosed by the proof.

On September 16, 1975, petitioner filed his Rule 60.02 motion alleging that "the final decree was entered by mistakes; inadvertence; excusable neglect; and/or fraud, by reason that the complaint was filed in Union County, Tennessee, to avoid embarrassment, and to pacify the defendant's emotional state of mind."

It is further alleged that "the parties were following advice of counsel,"[1] and that the court "does not have the proper venue and jurisdiction over the parties as provided by T.C.A. 36–804." It was further averred that the parties continued to live together as man and wife.

On the hearing conducted pursuant to this motion, the petitioner told the presiding Chancellor, William H. Inman, "Judge, I just lied to you." The conclusion reached

---

1. Advice of counsel is no defense to a criminal contempt, but may be considered in mitigation of punishment. *Robinson v. Air Draulics Engineering Co.,* 214 Tenn. 30, 377 S.W.2d 908 (1964).

in the majority opinion to the contrary notwithstanding, this was clearly "the particular conduct of petitioner which was found to be contemptuous," as was found by the Court of Criminal Appeals.

It appears from the proof, somewhat sketchily, that this whole sordid affair was a scheme concocted by petitioner and his wife, with the connivance and counsel of his then attorney (*not* counsel of record before this Court) to protect their property against the claims and demands of creditors, by transferring title to valuable properties to the wife. This iniquitous scheme brings into play serious questions of ethics and erudition of counsel. (Again, *not* counsel before this Court.)

After the hearing, Chancellor Inman set aside the property settlement and divorce as being "obtained fraudulently because the defendant was a citizen and resident of Sevier County, Tennessee, as admitted under oath by the plaintiff." He further adjudged petitioner to be in contempt of court, fined him $50.00 and bound him over to the next term of the grand jury.

While petitioner swore falsely in two particulars in the complaint (residence and separation) and again in the same two particulars on the divorce hearing and would have been subject to punishment for contempt in any of the four instances, the record is clear that he was punished for contempt for falsely swearing at the divorce hearing that his wife was a resident of Union County.

The ensuing grand jury indictment was artfully prepared and fully meets all legal requirements. It charges in plain terms that petitioner swore, before Chancellor Inman, that his wife "was a resident of Union County," knowing at the time that in point of fact she was a resident of Sevier County.

Upon the trial under this indictment, petitioner was found guilty and sentenced to serve in the state penitentiary for not less than one (1) nor more than two (2) years.

2. See *Shiflet v. State,* 217 Tenn. 690, 400 S.W.2d 542 (1966); *McCraw v. Adcox,* 217 Tenn. 591, 399 S.W.2d 753 (1966); *Gunn v.*

## I.

### *The Double Jeopardy Issue*

It should be noted at the outset that petitioner was convicted of a criminal contempt in Chancery Court.[2]

The Court of Criminal Appeals placed primary reliance upon *Ricketts v. State,* 111 Tenn. 380, 77 S.W. 1076 (1903). The very brief opinion in this case contains dictum that supports the conclusion of the Court of Criminal Appeals; however, the court did not have before it two convictions. The defendant was tried and convicted for contempt of court consisting of subordination of perjury. Apparently his defense was that contempt merged into the greater offense of subornation of perjury. In this context the Court said:

The offenses [contempt and subornation] are entirely distinct and independent. They are created upon different principles, for different purposes, are tried and punished differently, and a conviction or acquittal of one is no bar in a prosecution for the other.

111 Tenn. at 382–383, 77 S.W. at 1077.

Next, the Court of Criminal Appeals cites *Osborn v. State,* 160 Tenn. 599, 28 S.W.2d 49 (1930). There the defendant, a juror in a prior case, was convicted of bribery and was subsequently prosecuted for contempt of court based upon the same occurrence. The late Chief Justice Green, after holding that the defendant could be prosecuted for bribery and contempt, stated:

. . . [A] double punishment for the same offense is contrary to the spirit of our laws. Since he has been convicted of the felony, we suggest that the Attorney-General dismiss the contempt proceedings.

160 Tenn. at 602, 28 S.W.2d at 49.

Next, the Court of Criminal Appeals relied upon *Underwood v. State,* 187 Tenn. 530, 216 S.W.2d 26 (1948). There the Court held that, where a defendant violated an injunction against violating the liquor laws,

*Southern Bell Telephone & Telegraph Co.,* 201 Tenn. 38, 296 S.W.2d 843 (1956).

he was liable both for criminal prosecution for violation of the liquor laws and for contempt for violating the Court's order. The Court reasoned:

> When one is enjoined from committing certain illegal acts a commission of these acts subjects the offender to a criminal prosecution and a prosecution for contempt for violating the court order. This is not in effect double punishment. One is a punishment for violating a law while the other is for violating a court order. A court mandate or order would be a nullity if the violator could say I have paid a fine for a criminal violation and am, therefore, not subject to the order of the court.
>
> 187 Tenn. at 531–532, 216 S.W.2d at 26–27.

See also *Barrowman v. State,* 214 Tenn. 408, 381 S.W.2d 251 (1964) (following *Underwood*).

These cases are indeed supportive of the conclusion reached by the Court of Criminal Appeals. All are bottomed upon the premise that two separate and distinct offenses are involved. This predicate must be examined in the light of more recent cases.

I start my analysis with the *Colombo* series of cases.

Colombo was called before a Kings County, New York, grand jury and refused to answer questions. He was adjudged guilty of criminal contempt and punished accordingly. He was subsequently indicted for criminal contempt for the same failure to testify. The New York Appellate Court reversed the trial judge's determination that double jeopardy precluded the prosecution under the indictment. *People v. Colombo,* 25 N.Y.2d 641, 306 N.Y.S.2d 258, 254 N.E.2d 340 (1969).

The Supreme Court granted certiorari, vacated the judgment and remanded for further consideration. *Colombo v. New York,* 400 U.S. 16, 91 S.Ct. 99, 27 L.Ed.2d 16 (1970). On remand the New York Court of Appeals adhered to its earlier decision, reasoning that the first citation was for civil contempt whereas the indictment charged the commission of a criminal offense.

The Supreme Court again granted certiorari and in *Colombo v. New York,* 405 U.S. 9, 92 S.Ct. 756, 30 L.Ed.2d 762 (1972), vacated the judgment below, held that the contempt was criminal in character, and, without determining the double jeopardy question, remanded to the New York Court of Appeals for the purpose of considering this issue.

On remand, the New York Court of Appeals held that the two convictions could not stand together basing its reasoning on the "same evidence" and "same elements" tests:

> The *same evidence* provides the Judiciary Law contempt for which defendant was previously punished and the Penal Law contempt charged in the indictment, and the *elements* of the two contempt charges are the *same.* (Emphasis supplied). *People v. Colombo,* 31 N.Y.2d 947, 341 N.Y. S.2d 97, 98, 293 N.E.2d 247, 247 (1972).

The Court of Criminal Appeals attempts to walk around *Colombo* by saying that "[t]here is no diversity of offenses present in *Colombo*" but that here "[t]he indictment and conviction . . . for perjury is a separate and distinct offense."

But are they? The evidence and the elements are precisely the same. To prove the criminal contempt, perjury must be established. To prove the perjury, perjury must be established. No additional fact is necessary to either proof. The fact that it violated two separate statutes is of no significance.

In our recent case of *State v. Black,* 524 S.W.2d 913 (Tenn.1975), we did not expressly adopt the "same evidence" test; but the majority relied heavily upon *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which is bottomed on the "same evidence" or "same elements" tests, which are essentially identical:

> '*Each* of the offenses created requires proof of a *different element.* The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there

are two offenses or only one is *whether each provision requires proof of an additional fact which the other does not.'* 284 U.S. at 304, 52 S.Ct. at 182. (Emphasis supplied.) Quoted in 524 S.W.2d at 919.

The instant case flunks the *Blockburger* test, for neither the contempt nor the perjury conviction requires proof that the other does not.

The criteria of *Black* were summarized by Judge Daughtrey, writing for the Court of Criminal Appeals in *Greer v. State,* 539 S.W.2d 855 (Tenn.Cr.App.1976):

> . . . (1) whether the episode or transaction constitutes a violation of two distinct statutory provisions; (2) whether either of the offenses is a necessarily included offense of the other; (3) whether each of the offenses requires proof of a different element; and (4) whether each requires proof of an additional fact which the other does not. [Citation omitted.] A distillation of these factors produces essentially the 'same evidence' standard. 539 S.W.2d at 858.

Of course, the act in question here clearly violated at least two separate and distinct statutes: contempt, T.C.A. § 23–902(4), and perjury, T.C.A. § 39–3301. This is the factor which has dominated prior decisions permitting both offenses to stand together.

Neither offense is a lesser included offense within the other.

The final two factors, however, support the Defendant's position. The *contempt statute and the perjury statute do not have distinct elements for purposes of this case.*

It is clear from *Black* and *Blockburger* that the last two criteria—differing elements and additional facts—are the controlling considerations. See also *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), for further discussion of the issue of double jeopardy.

I think it evident that the clear trend of modern decisional law against dual convictions for what is essentially a single, indivisible act, as evidenced by the rationale of *Black, Blockburger* and *Colombo,* forces a re-evaluation of *Ricketts* and *Underwood.* I would hold that the criminal prosecution of the petitioner for perjury, following his conviction for criminal contempt, is barred by the double jeopardy provisions of Article I, Section 10 of the Constitution of Tennessee and the Fifth Amendment of the Constitution of the United States.

II.

There is yet another, and equally substantial, reason for reversing petitioner's conviction.

It is fundamental to a conviction for perjury that the false swearing be to a material fact. The statute (§ 39–3301) so commands; our case law so requires. *State v. Bowlus,* 50 Tenn. 29 (1870).

On March 7, 1977, we released our opinion in *Kane v. Kane,* 547 S.W.2d 559, holding (1) that Sec. 36–804, T.C.A., deals only with venue of divorce actions and not jurisdiction; and (2) that venue may be waived.[3]

It is evident that the Chancery Court at Maynardsville had jurisdiction to entertain a divorce action. By filing an answer and submitting herself to the personal jurisdiction of the court, petitioner's wife waived venue. Because the court had both subject matter jurisdiction and *in personam* jurisdiction, the residence of the parties had no materiality. It, therefore, follows that petitioner did not swear falsely "touching a matter material to the point in question" and his conviction for perjury may not stand.

I would reverse and dismiss.

---

**3.** I did not participate in *Kane v. Kane* and have grave reservations about the conclusions reached. It reinstates a practice long condemned by the bench and bar. However, it is currently the law in Tennessee.