**STATE of Tennessee**

v.

**Johnny MORROW.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 9, 2001.

---

Philip A. Condra, Jasper, for the Appellant, Johnny Morrow.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; James Michael Taylor, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JERRY L. SMITH, J., joined.

The Appellant, Johnny Morrow, a former member of the Tennessee Army National Guard, was convicted by a jury of five penal provisions of the Tennessee Military Code of 1970. The convictions were merged into a single Class E felony offense of fraud against the government, in violation of Tenn.Code Ann. § 58–1–630(3).

Morrow appeals his conviction, arguing: (1) that the penal provisions of Title 58, which are peculiar to the military, are not applicable to a member of the National Guard when not on active duty or in drill status; and (2) that his prosecution was barred by the statute of limitations. After review, we find merit in Morrow's argument that three of his convictions (Counts II, III, and IV), including his felony conviction of fraud against the government, did not occur while in a drill or duty status; therefore, these convictions are reversed and dismissed. We find that two of his convictions (Counts V and VI), both misdemeanors, are not subject to a drill or duty status requirement and, after finding they are not barred by the statute of limitations, these convictions are affirmed. Accordingly, the judgment is affirmed in part, reversed in part, and remanded for misdemeanor sentencing.

### Factual Background

In 1991, the Appellant enlisted in the Tennessee Army National Guard and was assigned to a guard unit in South Pittsburg, Tennessee. The National Guard requires its members to participate in training, two weeks during the summer, and drills two days per month. Every year a "showdown inspection" is conducted. At a "showdown inspection" all members of the Guard must be present and accountable for his or her issued equipment.

On May 2, 1996, the Appellant was issued equipment for a special assignment.[1] The Appellant was present with the issued equipment for the annual "showdown inspection" on August 3, 1996. In June of 1997, the Appellant was observed with the issued equipment during summer training. On August 2, 1997, the Appellant did not appear for the annual "Showdown Inspection." The Appellant was "Absent Without Leave" ("AWOL") for drills and training after November of 1997, and remained in this status until his discharge. The Appellant did not appear for the annual "Showdown Inspection" held on August 3, 1998. On September 18, 1998, an arrest warrant was issued for the Appellant for the charge of theft of property. After his arrest, the Appellant was escorted to the National Guard Armory in South Pittsburg. At the Armory, the Appellant returned a portion of the issued equipment and insisted that the remaining equipment was in his Armory locker. The Appellant was escorted to the locker area, but was unable to open any of the lockers with his key. The equipment was never found or returned. The Appellant was discharged under honorable conditions on October 1, 1998.

On December 7, 1998, the Marion County Grand Jury indicted the Appellant for one count of theft of property, a Class E felony. On August 2, 1999, a superseded indictment was returned by the grand jury charging the Appellant with theft and five violations of the Military Code. The pertinent language of the various counts in the indictment is:

Count I, theft of property;

"during October 1998, . . . did knowingly obtain control over NBC equipment, waterproof clothing, blanket, carrier Int. tool, field pact without liners, insert bar (field type), intrenching tool, nylon coat liner, sleeping mat, wet weather trousers, vinyl overshoes, pan mess [k]it, wet weather parka, wet weather poncho,

1. The Appellant was assigned the duty of traveling to Fort Campbell to "draw" ammunition for a live fire exercise. Because the duty

involved an overnight exercise, the Appellant was issued additional field gear.

camouflage parka,[2] wool scarf, large wool sweater, tent, sleeping bag and suit chem prot med, being the ... property of the State of Tennessee or the United States ... over $500.00 but less than $1,000.00 in value, in violation of Tenn. Code Ann. § 39–14–103," a Class E felony;

Count II, loss of military property;

"between August 2, 1997, and November 1, 1998, ... did ... lose military property of the United States or the State of Tennessee, said property consisting of NBC equipment, waterproof clothing, blanket, carrier Int. tool, field pact without liners, insert bar (field type), intrenching tool, nylon coat liner, sleeping mat, wet weather trousers, vinyl overshoes, pan mess kit, wet weather parka, wet weather poncho, camouflage parka, wool scarf, large wool sweater, tent, sleeping bag and suit chem prot med, ... having a value of more than $500.00 but less than $1,000.00, in violation of Tenn.Code Ann. § 58–1–623(2)," a Class E felony;

Count III, suffering the loss of military property;

"between August 2, 1997, and November 1, 1998 ... did ... suffer to be lost military property of the United States or the State of Tennessee, said property consisting of NBC equipment, waterproof clothing, blanket, carrier Int. tool, field pact without liners, insert bar (field type), intrenching tool, nylon coat liner, sleeping mat, wet weather trousers, vinyl overshoes, pan mess kit, wet weather parka, wet weather poncho, camou-

flage parka, wool scarf, large wool sweater, tent, sleeping bag and suit chem prot med, ... having a value of more than $500.00 but less than $1,000.00, in violation of Tenn.Code Ann. § 58–1–623(3)," a Class E felony;

Count IV, fraud against the government;

"between August 2, 1997, and November 1, 1998, ... did take ... control of property of the State of Tennessee, ... deliver to an individual of authority an amount of said property less than that for which he received..., in violation of Tenn.Code Ann. § 58–1–630," a Class E felony;

Count V, improper retention of military property;

"between August 3, 1998, and November 1, 1998, ... did ... after demand by civil or military officers of the State of Tennessee, retain clothing, military outfits or accoutrements, or other military property or equipment furnished by or through the State of Tennessee or the United States to a member, ... in violation of Tenn.Code Ann. § 58–1–634(a)," a Class C misdemeanor;

Count VI, failure to return military property;

"between August 3, 1998, and November 1, 1998, ... failed to account for or return to the property (sic) military authorities, property which came into his possession and to which the State of Tennessee or the United States may be entitled, ... in violation of Tenn.Code Ann. § 58–1–634(b)," a Class A misdemeanor.[3]

---

2. On the morning of trial, counts I, II and III were amended by deleting the camouflage parka, valued at $154.90, which reduced the overall value of government property allegedly lost, retained, or stolen to less than $500;

thus, reducing these Counts to class A misdemeanors.

3. Tenn.Code Ann. § 58–1–634(b) provides only that violation of this statute is a misde-

Trial was held on April 19, 2000. During opening statements, the State alluded to the fact that it would be introducing evidence of events which occurred in June of 1997. The Appellant moved to dismiss Counts I, II, III, V and VI of the indictment on grounds that these Counts, which were either charged or amended to misdemeanor offenses, were barred by the one-year statute of limitations. The motion was denied. At the conclusion of the State's proof, the Appellant moved for judgment of acquittal based on factual insufficiency, and additionally moved to dismiss, alleging Title 58 did not apply to all offenses for which he was indicted. The trial court granted judgment of acquittal as to Count I based upon insufficiency of the evidence. The trial proceeded on the remaining counts, Counts II–VI. The jury returned a verdict of guilty on all remaining counts.

On July 3, 2000, the trial court held a sentencing hearing. At the hearing, Counts II, III, V, and VI, were merged by the trial court into Count IV, fraud against the government, a Class E Felony. Upon his conviction of this offense, the Appellant received a one year suspended sentence with supervised probation. A motion for new trial, filed on July 19, 2000, was denied. This timely appeal followed.

## ANALYSIS

### I. Merger Doctrine

▆▆▆ Prior to our analysis of the two issues presented for review, we find it necessary to first address the trial court's merger of the Appellant's five convictions into a single crime.[4] During oral argument of this case, the State conceded that merger of all offenses was error. It is well-established that, "[w]here commission of one crime necessarily involves commission of the second, the offense so involved is said to be merged in the offense of which it is a part.... [T]he doctrine of merger does not apply where the offenses are separate and distinct, but only where the identical criminal acts constitute both offenses." 21 Am.Jur.2d *Criminal Law* § 21 (1998) (citations omitted); *see also State v. Robertson,* No. W1999–01872–CCA–R3–CD, 2000 WL 1863511 (Tenn. Crim.App. at Jackson, December 1, 2000). To determine the existence of separate offenses a court must consider the following factors:

(1) whether the episode or transaction constitutes a violation of two distinct statutory provisions;

(2) whether either of the offenses is a necessarily included offense of the other;

(3) whether each of the offenses requires proof of a different element;

(4) whether each requires proof of an additional fact which the other does not; and

(5) whether each protects different interests or remedies the same harm.

*Greer v. State,* 539 S.W.2d 855, 858 (Tenn. Crim.App.1976) (citing *State v. Black,* 524 S.W.2d 913, 919–20 (Tenn.1975)); *see also State v. Davis,* 613 S.W.2d 218, 220 (Tenn. 1981).

▆▆▆ This is not an inflexible test, rather it "requires close and careful analysis of

---

meanor without reference to the grade of misdemeanor. Tenn.Code Ann. § 39–11–114 (1998) states that "every person who is convicted of a misdemeanor the punishment for which is not otherwise prescribed by a statute of this state shall be sentenced as for a Class A misdemeanor."

4. This court is permitted to review the trial court's merger of the convicted offenses and reinstate the respective jury verdict, if necessary. *See State v. Davis,* 613 S.W.2d 218, 221 (Tenn.1981).

the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances." *Black,* 524 S.W.2d at 919; *see Davis,* 613 S.W.2d at 220.

Applying these factors in the present case, we conclude that, although several of the offenses could have been merged, merger of all the offenses into a single count of fraud against the government was error. We, in turn, proceed to address the Appellant's claims.

## II.  Applicability of Title 58

■ The Appellant argues "that the provisions of Title 58, Chapter 1, Section 601, *et seq.,* [are not] applicable to a member of the Tennessee Army National Guard when not on active duty or in drill status." Specifically, the Appellant contends that "he was not subject to these statutes except one weekend a month (24 days each year) and two weeks a summer (14 days). Out of 365 days a year, [the Appellant] was within these statutes 38 days." Section 632 reads:

> Sections 58–1–611—58–1–633 are applicable to members of the national guard while they are in a drill or duty status. The enumeration of crimes and offenses herein is declared to be cumulative to other criminal and penal statutes of the state, it being the intent of the general assembly that §§ 58–1–611—58–1–633 are designed solely to create certain specified offenses peculiar to the military and necessary to the discipline, training, proper functioning and the orderly government of the National Guard.

Tenn.Code Ann. § 58–1–632 (1989).

■ The statute does not define drill or duty status. In construing the meaning of drill or duty status, our primary role is to ascertain and give effect to the legislative intent of these terms without unduly restricting or expanding the statute's coverage beyond its intended scope. *Roseman v. Roseman,* 890 S.W.2d 27, 29 (Tenn.1994) (citation omitted). In determining legislative intent, we look first to the statute itself and rely, when possible, upon the ordinary meaning of the language and terms used. *State v. Smith,* 893 S.W.2d 908, 917 (Tenn.1994), *reh'g denied,* (Tenn.1995), *cert. denied,* 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). The term drill generally denotes a military training exercise; the term duty status has as its ordinary meaning the performance of obligations required of those in military service. We may also look to the plain language of the statute read *in pari materia* with other provisions of the military code. *See State v. Blouvett,* 904 S.W.2d 111, 113 (Tenn.1995). As such, we refer to the provisions of Tenn.Code Ann. § 58–1–205, which governs "assemblies annual training and other duty" of the guardsman. Moreover, we note that Tenn.Code Ann. § 58–1–205 cross references § 58–1–632.

■ Accordingly, we define drill status, also referred to as weekend drill, assembly, and individual duty training as that status when a guardsmen is required to "assemble for such drill, or other equivalent training, instruction or duties during each year," as provided by Tenn.Code Ann. § 58–1–205 (1989). We construe duty status, also referred to as annual training and summer encampment, as that status when members of the National Guard are required to "participate in such field training, encampments, maneuvers, schools, conferences, or other similar duties each year as may be ordered by competent authority," as required by Tenn.Code Ann. § 58–1–205. Duty status also includes any period during which the Governor has exercised his right to order the guardsmen into "active state duty" for certain specified events, disaster, insurrec-

tion, riot, etc. Tenn.Code Ann. §§ 58–1–106, –108 (1989).

Given these definitions, we find that §§ 58–1–611 through 58–1–633 do not apply to the Appellant in the present case. The indictment does not allege nor does the State contend that the Appellant's crimes occurred inclusively on dates when he was in a paid drill or duty status period. In sum, we find that §§ 58–1–611 through 58–1–633 have specific application and do not contemplate an ongoing or continuing crime, but rather the commission of crimes which occur only during a drill or duty status period. Counts II, III and IV are charged under these sections, and because the Appellant was not in a drill or duty status at the time the alleged crimes occurred, these Counts must be dismissed.

■ However, Count V and Count VI must be addressed separately. These Counts allege violation of § 58–1–634. Section 634 is not limited to crimes which occur during a drill or duty status. Indeed, section 634(d) states, "this section is to be given general application and *shall not be limited in its application by the provisions of § 58–1–632* ...." Tenn.Code Ann. § 58–1–634(d) (1989) (emphasis added). Therefore, Counts V and VI remain, and we must determine if these Counts are barred by the statute of limitations as argued by the Appellant.

### III.  Statute of Limitations

■ The "open-dated indictment" alleges that the conduct for the remaining counts, Counts V and VI, occurred between August 3, 1998, and November 1, 1998. Count V is a Class C misdemeanor. Count VI is a Class A misdemeanor. The statute of limitations for misdemeanors is one year. Tennessee Code Annotated § 40–2–102 (1997), reads, "prosecutions for misdemeanors shall be commenced within twelve (12) months next after the offense

has been committed...." To comply with the one-year limitation, we must determine when the offenses were committed.

Section 634(a) criminalizes retention of military property by a person after a demand has been made by civil or military officers of this state. The Appellant was arrested on September 18, 1998. On this date, a demand for the Appellant's issued military equipment was made, and he, thereafter, failed to return a portion of the equipment. The jury could rationally infer from the Appellant's failure to return a portion of the issued equipment that he improperly retained such. The Appellant was indicted on December 7, 1998, and the indictment was amended on August 2, 1999. Both dates are within one year from the date the offense was committed, September 18, 1998.

Section 634(b) makes it a crime for any person to fail to account for issued military property irrespective of whether his enlistment has expired. On September 18, 1998, the Appellant was required to account for his issued military equipment. He failed to do so. Therefore, we find that the one-year statute of limitations did not bar his prosecution under § 58–1–634(b).

### IV.  Merger Revisited

■ Notwithstanding the validity of the separate jury convictions under Count V, a class C misdemeanor, and Count VI, a class A misdemeanor, we find that merger of these convictions is patently implicated in view of those principles previously discussed. The two convictions arise, not from distinct statutes but, rather, from subsections of the same statute. Both subsections (a) and (b) of Tenn.Code Ann. § 58–1–634 protect the same interests and remedy the same harm to the military, *i.e.*, loss or retention of military property. The military property that was unlawfully "retain[ed]" was the same property that

"failed to [be] account[ed] for or return[ed]." Both crimes occurred during the same time period. Because we find that subsections 634(a) and 634(b) essentially criminalize the same conduct, we hold that merger of the convictions is required.

## CONCLUSION

The Appellant's conviction for Counts II, III, and IV are reversed and dismissed because the Appellant was not in a drill or duty status at the time of the commission of these offenses. Because the Appellant's convictions for Counts V and VI do not violate the one-year statute of limitations for misdemeanors, these convictions are affirmed. Finally, Count V, a Class C misdemeanor, is merged with Count VI, a Class A misdemeanor, resulting in a single conviction for violation of Tenn.Code Ann. § 58–1–634(b). This misdemeanor conviction is remanded to the trial court for sentencing and the case is remanded for entry of corrected judgments of conviction consistent with this opinion.