RONALD EDWARD WALTON, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Sept. 10, 1969.

Certiorari Denied by Supreme Court Dec. 15, 1969.

George W. Carpenter, Chattanooga, for plaintiff in error, case No. 115.

Robert Batson, Jr., Chattanooga, for plaintiff in error, case No. 143.

George F. McCanless, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Gerald W. Summers, Asst. Dist. Atty. Gen., Chattanooga, for defendant in error, case No. 115.

George F. McCanless, Atty. Gen., W. Collins Bonds, Asst. Atty. Gen., Nashville, Richard R. Ruth, Jr., Asst. Dist. Atty. Gen., Chattanooga, for defendant in error, case No. 143.

## OPINION

HYDER, Judge.

Ronald Edward Walton, plaintiff in error, was the defendant in two cases in the Criminal Court of Hamilton County, Tennessee. He was tried and convicted in each case, as will hereinafter be shown, and he has appealed the judgments and sentences to this Court. It is our decision that the two cases should be dealt with in this one opinion.

The State alleges that the defendant, on July 21, 1968, committed burglary in the first degree with the intent to have unlawful carnal knowledge of Carolyn Few; and, in the other case the State alleges that the defendant committed an assault and battery upon Carolyn Few with the intent to rape her. We are of the opinion that the greater offense, assault and battery with intent to commit rape, should be affirmed; and that the lesser offense should be reversed and dismissed. We will discuss the two cases in the order that they are numbered.

## CASE NO. 115
## CRIMINAL COURT OF HAMILTON COUNTY NO. 115421

The Grand Jury of Hamilton County returned a presentment to the Court on September 11, 1968, charging that the defendant on the 21st day of July, 1968, did unlawfully and feloniously commit an assault and battery upon the person of Carolyn Few, a female over the age of 12 years, with an intent, forcibly and against her will, to have unlawful carnal knowledge of the said Carolyn Few, against the peace and dignity of the State. Upon proper showing of indigency, counsel was appointed to represent defendant on September 23, 1968. On October 30, 1968, defendant was tried, convicted and sentenced to a term in the penitentiary of ten to twelve years.

Three assignments of error have been filed, with a brief, in this case, as follows:

1. The lower court erred in failing to instruct the jury on the question of identity.

2. The lower court erred in instructing the jury that an alibi, in order to be effective, must cover the whole period of time in question.

3. The evidence submitted in the lower court preponderates against the verdict of guilty and in favor of defendant's innocence.

We have read the instructions which the trial judge gave to the jury and we are of the opinion that the first two assignments of error are without merit. We feel that the entire charge of the court defines correctly the ques-

tion of identity and the law concerning alibi. On the subject of identity the judge charged:

"The theory of the defendant is that he is not guilty of this offense. His contention is that he is wholly innocent of it, and the witnesses for the State are mistaken as to his identity; that it is a case of mistaken personal identity."

In support of the first two assignments of error the defendant cites and relies upon opinions of our Supreme Court in three cases: Ford v. State, 101 Tenn. 454, 47 S.W. 703; Poe v. State, 212 Tenn. 413, 370 S.W.2d 488; and Rader v. State, 218 Tenn. 481, 404 S.W.2d 487. The *Ford* case is an able opinion of 1898 by Chief Justice Snodgrass. There, as here, the guilt of defendant depended on proof of his identity; and in *Ford* the only evidence on that subject was the testimony of a little girl who was the victim of rape. The offense there was committed in the dark and she testified that she could not see him but that she could identify him because of "the way he felt and changed his voice." In commenting on the trial judge's charge the Chief Justice said:

"The Court wholly omitted to give any special charge on the question of identity. There was no request, but the sentence is practically equivalent to a life sentence, and, as it was the question in the case we think it should have been given."

■ We feel that the facts of the instant case are distinguishable from those in the *Ford* case; the age of the victim and the opportunity to observe and identify the assailant being the chief differences; but, in any event, we feel that in the instant case there was a proper

instruction given on identity. The trial judge did not go to any great length in discussing the subject, but he left no doubt that it was the defendant's contention that he was innocent and that witnesses were mistaken as to his identity, that it was a case of mistaken personal identity. This is certainly not an omission of the question of identity and the instructions given were correct.

In the instant case the portion of the trial judge's charge on alibi which is defendant's second assignment of error reads as follows:

"In order to be effective, the proof must cover the whole period of time, and must establish such a state of facts as would make it impossible that the defendant should have been at both places."

In support of this assignment the defendant relies again upon the decision in Ford v. State, (supra).

In the *Ford* case the trial judge charged, among other things:

"When a defendant interposes the defense of an alibi, and fails to establish it, it is a circumstance against him, but is not conclusive evidence of his guilt."

In connection with this part of the charge the Supreme Court there said:

"This is error. It is not always a circumstance against a person charged with an offense that he merely fails to establish an alibi which he attempts to prove."

Of course the instant case does not have any such erroneous charge on the subject of alibi, nor does the defendant contend that it does.

The charge in the *Ford* case further said:

"Proof of an alibi should cover the whole time of the transaction in question, for if it be possible that the prisoner could have been at both places the proof of the alibi is of no value whatever."

The Supreme Court said:

"This is too strong. It need not exclude the absolute possibility of presence at the time and place of the offense to be of some value. It can be admitted and considered for what it may be worth, if it renders it very improbable that defendant could have been present. This is the soundest rule. [Citations omitted] It can only be conclusive when, taken as true, it shows that there was no possibility of defendant's presence, where that is necessary."

The language of the trial judge in the instant case is not as strong as that used in the *Ford* case on this subject. While we do not approve the statement complained of on the subject of alibi, we do not feel that it is sufficiently strong to mislead the jury and require a reversal. The trial judge in the case we are now considering gave the jury a full charge on the subject of alibi. The portion complained of is just a small excerpt from his entire instructions on the subject. Immediately following the one sentence on alibi assigned as error the trial judge concluded his instructions on that subject by saying:

"The defendant is not required to prove an alibi beyond a reasonable doubt, but you will take the proof touching the alibi, in connection with all the other proof in the case, and if it produces in your mind a

reasonable doubt as to the defendant's guilt, your duty is to acquit him."

We are of the opinion that the entire charge of the trial judge was adequate, and that it properly instructed the jury on the subjects of identity and alibi.

The third assignment of error is that the evidence preponderates against the verdict of guilty and in favor of defendant's innocence.

It is well established by numerous decisions of the Supreme Court of Tennessee, that a verdict of guilty, approved by the trial judge, accredits the testimony of the State's witnesses, resolves all conflicts in the testimony in favor of the State and establishes the State's theory of the case. Under such a verdict the presumption of innocence disappears, and upon appeal, the presumption of innocence is replaced by a presumption guilt. This Court is not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict, and the defendant on appeal has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Bacon v. State, 215 Tenn. 268, 385 S.W.2d 107; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Brown v. State, Tenn.Crim.App., 441 S.W.2d 485.

In the instant case Carolyn Few testified that she was in her home alone and asleep during the night of July 21, 1968. She had just been married four months and her husband was at work, on the third shift. She stated

that she was awakened at about four o'clock in the morning, that the defendant was in her bedroom, that he jumped on top of her and put his hands around her throat and told her that if she screamed he would kill her. She continued her testimony by saying that she told the defendant that she was in her menstrual period and that she would have to wash up. The defendant let her go into her bathroom, and she filled the basin with hot water, soaked a wash rag in it, and when defendant came into the bathroom she hit him in the face with the hot rag, screamed and ran out the back door for help. She testified that she could see and recognize the defendant, that she had known him for about five years because he ran around with her brother.

Carolyn Few testified that she could see the defendant clearly, that her bedroom is illuminated by a street light outside, and that this light shone on his face.

It is clear from this record that Carolyn Few knew the defendant for several years prior to this crime, that she had known that he was a friend of her brother's, and that she had seen him frequently. It is also clear that she did not know his name, and for this reason, on cross examination, her testimony was at times vague on the question of whether she knew the defendant. There is absolutely no question in our opinion that she did know the defendant and that she identified him as her assailant, but she was not sure of his name until she asked her brother.

Defendant's witnesses who attempted to establish an alibi in his behalf were all members of his family. They testified that the defendant was at home and in bed at

times before and after this crime, but none of them testified that he was at some other place than the home of Mrs. Few at the time she says she was assaulted.

Upon a review of the entire record it is clear that the defendant has failed to carry the burden of demonstrating here that the evidence preponderates against the verdict of the jury and in favor of his innocence.

For the reasons stated the assignments of error are overruled and the judgment of the trial court in case number 115 is affirmed.

## CASE NO. 143
## CRIMINAL COURT OF HAMILTON COUNTY
## NO. 115433

The Grand Jury of Hamilton County, on September 11, 1968, returned into open Court an indictment charging that the defendant did, on the 21st day of July, 1968, unlawfully, feloniously and burglariously break and enter the dwelling house of Carolyn Few, by night, with intent then and there to commit a felony, to-wit: rape upon the person of Carolyn Few, forcibly and against her will, against the peace and dignity of the State.

On September 30, 1968, counsel was appointed to represent defendant, and his jury trial on December 13, 1968 resulted in conviction, judgment, and sentence of five to ten years in the penitentiary. It is this judgment and sentence which is now before us on appeal.

Defendant has filed his brief and assignments of error, one of which contends that the defendant was placed in double jeopardy when he was charged with the attempt to ravish, was tried and convicted on that charge, and

was subsequently tried and convicted on the burglary charge, these two being included offenses arising out of one act. It is this assignment of error with which we agree.

The questions with which we will deal are: Can a defendant be convicted of both burglary, with intent to commit rape, and the subsequent crime of assault and battery with intent to rape after he has made his illegal entry? If our answer to this question is in the negative, our next question is: In such event which judgment and sentence should be allowed to stand?

In Cronan v. State, 113 Tenn. 539, 82 S.W. 477 our Supreme Court considered an appeal in a case where the defendant had been convicted of burglary under the first count of an indictment and of petit larceny under the second count. The first count charged defendant with breaking and entering a camphouse with intent to steal; and the second count charged petit larceny. The Supreme Court modified that judgment and released the defendant on the verdict as to petit larceny, saying:

"We are of the opinion, however, that it was an error in the court below to render a judgment for both of the crimes charged. It is true that the defendant below might have been convicted under the indictment as framed there for feloniously breaking and entering the house referred to or for larceny. Judgment, however, could not be entered against him for both. On a conviction under the first count the crime averred in the second would be included."

The opinion continues by citing Pardue v. State, 4 Baxt., 10, 13, 14; with the following:

"On the latter page, the following is quoted, with approval, from Commonwealth v. Hope, 22 Pick. (Mass.), p. 1, viz.: 'Upon a general conviction, the jury finding all the averments to be true, the charge of felony is considered as embraced in the charge of burglary, and one punishment is imposed as upon one combined offense.' "

Of course, in each case, it is necessary for the Court to consider carefully the facts of each particular case as to whether or not the conviction of one offense is a bar to the conviction of another. Even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice in this State is not approved, and certainly it must be clear that the offenses are wholly separate and distinct. Our cases appear to prohibit the practice where the offenses grow out of one transaction and involve but one criminal intent. To hold that the State may split the same transaction into independent indictments instead of including them in separate counts of one indictment would authorize the State by indirection to duplicate punishment for the same transaction, though forbidden by the rule announced in State v. Covington, 142 Tenn. 659, 222 S.W. 1; Patmore v. State, 152 Tenn. 281, 277 S.W. 892; Dowdy v. State, 158 Tenn. 364, 13 S.W.2d 794; and English v. State, 219 Tenn. 568, 411 S.W.2d 702.

We have considered carefully the facts of the two cases now before us, and we feel that the conviction of one is a bar to the conviction of the other. We find that these offenses were committed at the same time and are parts of a single continuing criminal act, inspired

by the same criminal intent which is essential to each offense, and that they are susceptible to but one punishment. Patmore v. State, (supra).

We feel that it is advisable to note our reason for distinguishing the instant case from Harris v. State, 206 Tenn. 276, 332 S.W.2d 675, where our Supreme Court said:

> "The offenses of burglary and assault upon a female with intent to commit rape do not constitute the same offense, but are entirely distinct and unconnected offenses."

Harris broke into the home of an elderly woman, in the middle of the night, looking for money. Upon his discovery of Roxie Logan there in bed he decided to rape her. The Court said these were two distinct and unrelated cases.

The State relies upon the decision in the *Harris* case (supra) as authority for allowing both of these sentences to stand.

Harris committed burglary of the Roxie Logan home with the intent to commit the offense of larceny. While in the home his intent was changed and he attempted to commit the crime of rape. These are two wholly separate offenses. They were not one single continuing criminal act, inspired by the same criminal intent essential to both, thus there were two separate offenses and two convictions.

In the instant cases Walton committed burglary of the Carolyn Few home with the intent to commit the offense of rape. While he did not accomplish the rape, he was

proceeding with his original intent and committed assault and battery upon Carolyn Few with intent to commit rape. Contrary to Harris these are not wholly separate offenses. They are one single continuing criminal act, inspired by the same criminal intent essential to both, and are but one offense. State v. Covington, Patmore v. State, Dowdy v. State, and English v. State (supra).

We therefore hold that both of the judgments and sentences against Ronald Edward Walton cannot stand.

It seems to us that it is well settled that where there are two jury verdicts finding guilt of different offenses, the law in such case refers the verdict to the highest offense, or the highest grade of offense. Kelly v. State, 66 Tenn. (7 Baxt.) 84; Patmore v. State, supra 152 Tenn. at 285, 277 S.W. 892. It is then, in our opinion, the duty of the Court to determine the highest offense, or the highest grade of offense, and to allow the judgment and sentence for that offense to stand and to strike the judgment and sentence for the lower or lesser offense.

This same general rule would apply when, on appeal, two judgments against the same defendant are being considered. Upon a finding that only one of the two judgments can stand, the appellate court should allow the judgment for the greater offense to stand, as a general rule.

We determine that the grade of offense is judged by the punishment; as in the instant cases the higher offense is assault and battery with intent to commit rape. The punishment fixed by the jury for that

crime was twelve years, and the judgment and sentence was ten to twelve years in the penitentiary. The lower grade of offense of the two was burglary, the verdict of the jury fixing ten years maximum punishment, and the judgment and sentence being five to ten years in the penitentiary.

We do not feel that it is necessary to discuss the additional assignments of error filed with this Court in Case numbered 143.

As we stated at the outset, and for the reasons given in this opinion, we affirm the conviction, judgment and sentence in the case numbered 115, assault and battery with intent to commit rape. We reverse the conviction, judgment and sentence in the case numbered 143, burglary with intent to commit rape. It is so ordered.

WALKER, P. J., and MITCHELL, J., concur.