802 F.2d 460
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James E. STEPHENS, Petitioner-Appellee,
v.
Lawrence LACK, et al., Respondents-Appellants.
 No. 85-6048.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1986.
 
 Before KEITH and GUY, Circuit Judges, and BALLANTINE, District Judge.*
 PER CURIAM.
 
 
 1
 Finding that the petitioner had been denied his sixth amendment right to effective assistance of counsel at his guilty plea and sentencing hearings, the district court granted habeas relief and ordered release or retrial. Upon a full review of the record, we conclude that the district judge was in error, and reverse.
 
 I.
 
 2
 After pleading guilty in 1982 to two separate indictments charging armed robbery, Stephens was sentenced to two ten-year consecutive sentences.[1] The first ten-year sentence was to be served concurrently, however, with a prior ten-year armed robbery sentence already being served.
 
 
 3
 Stephens, who was 21 years old at the time of the sentencing, had hoped by pleading guilty to have both sentences run concurrently with his prior sentence. (App. 157.) Obviously disappointed when the trial judge made only one of the two sentences concurrent, Stephens filed a post-conviction relief petition in July of 1983. In this petition Stephens alleged three trial court errors: (1) an improper arraignment on one of the two robbery charges; (2) an illegal lineup; and (3) that there was a robbery on only one person, not two, and therefore only one robbery indictment should have been returned against him. Thus, the second sentence resulted in double jeopardy.
 
 
 4
 An evidentiary hearing was held on Stephens' post-conviction relief petition, at which Stephens and his appointed trial counsel, Wilkes Coffey, both testified. The petition for post-conviction relief was denied. However, during the testimony of Wilkes Coffey, certain testimony was elicited which has since be-ome the focal point of this litigation. Coffey was asked.
 
 
 5
 Q. Do you think you did a good job of representing Mr. Stephens, Mr. Coffey?
 
 
 6
 A. No.
 
 
 7
 Q. Why do you say that?
 
 
 8
 A. Because I missed a most important fact, and I wouldn't lie under oath.
 
 
 9
 (App. 128-129.)
 
 
 10
 Subsequent questioning developed that the missing fact concerned the fact that both persons who were robbed were Holiday Inn employees and the robberies occurred at the same time and place.[2] Coffey reasoned from this that "[t]his should have been treated as one crime, and I should have insisted that they be." (App. 129.)[3]
 
 
 11
 Upon appeal to the Court of Criminal Appeals, Stephens shifted his arguments, and now argued for the first time that he was deprived of effective assistance of counsel. The appeals court denied relief and not only found no ineffective assistance of counsel, but also ruled there was no merit to his arguments as they related to his lineup, his arraignment, and his contention that only one robbery had been committed. The Tennessee Supreme Court subsequently denied Stephens' application for further appeal, and this habeas action followed.
 
 II.
 
 12
 In one part of the opinion rendered by the Rutherford County Circuit Court at the conclusion of Stephens' post-conviction evidentiary hearing, the hearing judge stated:
 
 
 13
 Wilkes Coffey, Jr., Esquire was appointed counsel and has testified extensively at the hearing for this Motion for Relief. This extensive testimony can only be interpreted as "ineffective assistance of counsel", in that he was not fully advised, did not perform an adequate investigation in his opinion and failed to raise the alleged violation of the defendant's Constitutional rights in the lineup.
 
 
 14
 (App. 175.)
 
 
 15
 The United States District Court in commenting on the above finding stated:
 
 
 16
 The (informal) transcript of the remarks of such hearing Judge lays to rest that contention:This Court may decide whether the hearing Judge made findings.of historical facts "... on the transcript of one judge's remarks ..." at the hearing, Wainwright v. Goode, 464 U.S. 78, [851, 104 S. Ct. 378, 382, 78 L.Ed.2d 187 (1983); and this Court decides that the aforequoted remarks of the hearing Judge constituted his findings of the historical facts he mentioned.
 
 
 17
 (App. 12.)
 
 
 18
 This conclusion on which the district court largely based its decision to grant habeas relief is clearly erroneous for two reasons. First, the Tennessee circuit court did not even have the issue of effective assistance of counsel before it since it was never initially raised. Thus, this comment of the trial judge is dictum and, as a reading of his whole opinion indicates, not at all central to any of his conclusions on the issues actually raised.[4] (App. 173-177.)
 
 
 19
 More significantly, however, the district court's holding runs counter to the express pronouncement on this issue by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In discussing habeas challenges as they relate to an ineffective assistance of counsel claim, the Court stated:
 
 
 20
 Finally, in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. Sec. 2254(d). ineffectiveness is not a question of "basic, primary, or historical fac[t]," Townsend v. Sain, 372 U.S. 293, 309, n.6 (1963). Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact.
 
 
 21
 466 U.S. at 698.
 
 
 22
 This does not resolve the issue, however, because we still must consider whether the district court reached the right result even if for the wrong reason. We conclude that it did not.
 
 
 23
 In assessing an ineffective assistance of counsel claim, a two-part test is applied. First, there must be a showing that counsel's performance was deficient, and second, a defendant must prove affirmatively that the deficient performance prejudiced the outcome. Strickland, 466 U.S. at 687. It is not necessary to always address both components, however:
 
 
 24
 [T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry .... In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant .... The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed.
 
 
 25
 Id. at 697. Since we find that no prejudice was suffered by the petitioner here, we do not specifically address the claimed deficiencies in performance except as they relate to the issue of prejudice.
 
 
 26
 Stephens' claims of ineffective assistance of counsel relate to the arraignment, the lineup, and whether there was one robbery or two. In order for Stephens to show prejudice on any of these three claims, his legal conclusions on these issues must be correct. They are not.
 
 
 27
 First, as to the arraignment, the claim is that petitioner was never formally arraigned on one of the two charges.[5] We adopt the reasoning of the Tennessee Court of Criminal Appeals on this issue which held:[6]
 
 
 28
 The defendant alleges that post-conviction relief should have been granted because he was arraigned on only one indictment. As stated, he was fully informed of the charges against him prior to the time that he entered his guilty pleas. There was no question of his identity and his pleas were entered knowingly and understandingly. He was not deprived of any right. See Manier v. Henderson, 442 S.W.2d 281 (Tenn. Crim. App. 1969). Moreover, any infirmity here was waived by the entry of the guilty plea. Garrett v. State, 534 S.W.2d 325 (Tenn. Crim. App. 1975).
 
 
 29
 (App. 50.)
 
 
 30
 The only alleged defect in the lineup about which Stephens complains is that he was required to speak. The speech was for voice identification and not for content. There is no constitutional violation involved here, as such speaking does not implicate any fifth amendment privileges relating to self-incrimination. Like handwriting exemplars and blood samples, it is non-testimonial in character. United States v. Wade, 388 U.S. 218, 222 (1967).
 
 
 31
 Lastly, Stephens argues as his main contention that counsel was ineffective due to not determining that there was one robbery not two. This contention breaks down into two parts: (1) as a factual matter only one person was robbed; and (2) even if both persons were robbed, they were both Holiday Inn employees and petitioner only had the intent to commit one robbery --thus two sentences would amount to double jeopardy.
 
 
 32
 The first part of this contention as it relates to the facts can be quickly disposed of. The petitioner simply told a different story at the post-conviction hearing than he told his attorney or the court at the taking of his plea and sentencing. The state court in the post-conviction proceeding chose to rely on the version that surfaced at the time of the plea. This was entirely appropriate. To limit the appellate court to the later version of the facts would be to invite perjury in post-trial proceedings. Furthermore, it is clear from the record that stephens was intelligent, articulate, communicative, and knew what was going on during all the proceedings.[7] There is no reason to believe that his acceptance at plea and sentencing of the prosecutor's version of what occurred at the robberies was based on either misinformation or lack of information.
 
 
 33
 The second part of this contention is predicated on a misconception as to the applicable law. The Tennessee Court of Criminal Appeals ruled that under Tennessee law the robberies committed here would constitute two offenses prosecutable as. such. Moore v. State of Tennessee, 563 S.W.2d 215 (1977). Walton v. State of Tennessee, 448 S.W.2d 690 (Tenn. Crim. App. 1969), on which petitioner places heavy reliance is distinguishable. In Walton, the defendant was convicted of burglary with intent to commit rape and assault with intent to rape. The court found these were included offenses arising out of one act and that only one conviction could stand. Moore, relied upon by the Tennessee Court of Criminal Appeals, is much closer to the facts here. Moore involved the robbery of two women at the same time sharing the same apartment. Of even greater importance, however, Walton is no longer good law under recent Tennessee decisions. Greer v. State, 539 S.W.2d 855 (1976).
 
 
 34
 At oral argument petitioner's counsel also relied upon State v. Henderson, 620 S.W.2d 484 (1981) and State v. Maxwell, 669 S.W.2d 100 (Tenn. Crim. App. 1984). Neither of these cases is apposite for the reason that they both deal with the robbing of one person. We are mindful that petitioner now contends that he only robbed one person, but we reiterate that we accept the Tennessee courts' conclusion to the contrary. Since the Tennessee law is not as suggested by petitioner, it follows that his counsel could not have been ineffective in failing to raise 0 an invalid point of law.[8]
 
 
 35
 For the foregoing reasons, we find it necessary to REVERSE the district court's decision to grant the writ of habeas corpus.
 
 
 
 *
 Honorable Thomas A. Ballantine, Jr., United States District Court, Western District of Kentucky, sitting by designation
 
 
 [1]
 This was the minimum penalty for armed robbery. It was also part of Stephens' plea bargain that he receive a ten-year sentence on each charge
 
 
 [2]
 Stephens and an accomplice, both armed, had entered a Holiday Inn and robbed the night clerk of the contents of the Holiday Inn cash box. While the robbery was in progress, another man came in who was robbed of personal property. Stephens now denies he ever robbed the second man
 
 
 [3]
 Coffey also responded to a question about the possibility of an improper lineup by stating: "Well, I'll have to be candid with you that those lineup technical things, they never have been very meaningful to me. Maybe I've been in error as a defense attorney, but that didn't register with me as anything I should concern myself with." (App. 126.)
 
 
 [4]
 It also follows as a matter of logic that the state court could not have found ineffective assistance of counsel since it denied all relief to petitioner
 
 
 [5]
 This argument may not even be factually accurate as there is a procedure for informal arraignment by motion which does not occur in the courtroom. (App. 134-35.)
 
 
 [6]
 It is also clear from Stephens' own testimony at the evidentiary hearing that his attorney went over both indictments with him prior to his plea and that he knew exactly that with which he was charged. (App. 103.)
 
 
 [7]
 Stephens' trial attorney, although obviously sympathetic to him, made it clear at the evidentiary hearing on the postconviction petition that Stephens understood the proceedings:
 Q. Mr. Coffey, let me ask you, do you think that Mr. Stephens completely understood every question and all the proceedings on plea day? Gen. Dotson has read the transcript or certain portions thereof here today and asked Mr. Stephens questions. Do you think he completely understood what was going on?
 A. Well, Mr. Moore, you asked a question you shouldn't have asked. But, of course, I do. He's intelligent. I went over all that with him, yes. There's no way that he didn't come up knowing what was going to happen. The question now that belongs to the Chancellor's power is, even so, should not this youngster be given some room here, some relief? That's the question. No, he came up here knowing. He said he was nervous; he was a little bit nervous. But he's smart.
 (App. 128.)
 
 
 [8]
 The evidentiary hearing transcript makes it clear that Stephens' counsel's willingness to accept blame for not raising this point of law is predicated to a large degree on his feelings that Stephens, being a young intelligent person, received too harsh a sentence. See, e.g., transcript of evidentiary hearing, App. at 128, 137