**Larry LYON and Pam Lyon, Appellants,**

v.

**Tony McLAUGHLIN, et al., Respondents.**

**No. WD 54082.**

Missouri Court of Appeals,
Western District.

Jan. 13, 1998.

James A. Rahm, Joyce J. Wendel, Rahm, Crawford & Wendel, Carrollton, for appellants.

Paul G. Schepers, Fred Bellemere, III, Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Kansas City, for respondents.

Before ULRICH, C.J., P.J., and SMART and LAURA DENVIR STITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Larry and Pamela Lyon appeal from the trial court's order granting summary judgment in favor of defendants Tony McLaughlin and Joe DiMarco in the action for negligence. Mr. Lyon was an employee of Hunt Midwest Mining when his back was injured while he was being supervised by Mr. McLaughlin and where Mr. DiMarco was "in charge" of safety. The action is to recover against the two named fellow employees of Hunt Midwest Mining on a theory of "co-worker liability" after recovery by Mr. Lyon under Missouri's Worker's Compensation statute. Mr. Lyon raises two points on appeal. He contends the trial court erred in

granting summary judgment in favor of Mr. McLaughlin and Mr. DiMarco where a genuine issue of material fact exists as to whether Mr. McLaughlin and/or Mr. DiMarco performed actionable "affirmative acts" which caused or increased the risk of injury to Mr. Lyon. The judgment of the trial court is affirmed.

## FACTS

Larry Lyon was working in the maintenance department at Hunt Midwest Mining on November 16, 1996, performing maintenance work and repair work on plant equipment. Rock overflowed out of a hopper onto a conveyer and stopped the conveyer belt from moving rock at the impactor site. Larry Lyon, Harry Lyon, and Kenny Houk arrived to help clean up the spilled rock. Mr. Houk told various truck drivers who were at the spill site to help with the clean up of the spilled rock.

Tony McLaughlin, Plant Superintendent and Mr. Lyon's immediate supervisor, arrived at the scene. Mr. McLaughlin's duties as Plant Superintendent included oversight of all work performed at Hunt Midwest Mining. The truck drivers and Harry Lyon "clocked-out" at the direction of Mr. McLaughlin. Mr. McLaughlin then instructed Mr. Lyon and Mr. Houk to move the spilled rock by hand to a ramp by the conveyer. Mr. McLaughlin operated a Case 1845 Uniloader on the ramp to remove the rocks Mr. Houk and Mr. Lyon placed there.

After the rock was removed from the top of the conveyer, Mr. McLaughlin instructed Mr. Lyon and Mr. Houk to pry open the tin cover of the conveyer using a piece of drill steel to try and get the tin cover off the conveyer. When this did not work, Mr. McLaughlin told Mr. Houk and Mr. Lyon to get under the tin cover and to lift the cover with their backs. After their initial effort to lift the cover with their backs, Mr. Houk and Mr. Lyon told Mr. McLaughlin that they could not lift the cover using their backs and that they could suffer serious injury if they continued to try. Mr. McLaughlin ordered them to try again, aware that Mr. Lyon had sustained a previous back injury in September 1990. Mr. Lyon attempted the proce-

dure again for fear of losing his job. During the second attempt, the force on the tin cover caused the tin to collapse onto Mr. Lyon, pushing him downward from a bent position while his knees were locked straight causing injury to his back. As a result of the injury, a disc and partial vertebra were removed from Mr. Lyon's back by surgical procedure and two steel plates and four screws were installed.

Joe DiMarco was Sales and Safety Coordinator at Hunt Midwest Mining on November 16, 1996. Mr. DiMarco was not present at the plant when Mr. Lyon was injured. Mr. DiMarco was responsible for safety training, keeping records of injuries and assuring compliance with Mining Safety and Health Administration regulations. Mr. DiMarco monitored Mr. Lyon's work in the control house and frequently asked him about production.

One of Mr. DiMarco's responsibilities as Sales and Safety Coordinator was to provide all new employees forty hours of safety training. The only safety training Mr. Lyon received, however, was watching a safety film one day. Mr. Lyon was given a slip of paper by Mr. DiMarco after watching this film and told that if an inspector asked him whether he had the forty hours of safety training to respond affirmatively.

Mr. DiMarco had been awarded an associate's degree in business administration and had attended one additional semester of college. For five years prior to being employed by Hunt Midwest Mining, Mr. DiMarco was a parts salesman for a car dealership. Mr. DiMarco lacked experience and training in occupational safety prior to being employed at Hunt Midwest Mining. The only training Mr. DiMarco received from Hunt Midwest Mining regarding his duties as safety coordinator consisted of reading safety books and reviewing plant operations. Mr. DiMarco neither read books nor received training in ergonomics, human factors engineering, human biomechanics, or human tolerances in lifting capacities.

Mr. Lyon filed a worker's compensation claim as a result of his injuries and received worker's compensation benefits. Mr. Lyon

filed suit against Mr. McLaughlin and Mr. DiMarco alleging that both men had performed "affirmative acts" that caused or increased the risk of injury to him. Mr. Lyon specifically alleged that Mr. McLaughlin had conceived and implemented the plan to clear the spilled rock and lift the tin cover from the conveyor and that Mr. DiMarco, thereby, had knowingly and actively created a hazardous condition. The trial court granted Mr. McLaughlin and Mr. DiMarco's motion for summary judgment, finding that Mr. Lyon's claim was excluded by the Worker's Compensation Act. This appeal followed.

### STANDARD OF REVIEW

Appellate review of the grant of summary judgment is reviewed *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is viewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts asserted in affidavits or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must show that one or more of the material facts shown by the movant not to be in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rest upon the mere allegations and denials of the pleadings but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler*, 921 S.W.2d 16, 19 (Mo.App.1996). A genuine dispute is one which "is real, not merely argumentative, imaginary or frivolous." *ITT*, 854 S.W.2d at 382. If the record contains competent evidence that two plausible, but contradictory accounts of essential facts exist, then a genuine issue of material fact remains to be resolved. *Bickerton, Inc. v. American States Ins. Co.*, 898 S.W.2d 595, 600 (Mo.App.1995). A question of fact exists when "fairminded people, exercising reasonable judgment could reach different conclusions on the issue in controversy." *Nieberg v. Marshall*, 865 S.W.2d 409, 410 (Mo.App.1993).

### I. WHETHER AN ISSUE OF MATERIAL FACT EXISTS AS TO MR. MCLAUGHLIN'S LIABILITY

As his first point on appeal, Mr. Lyon argues that the trial court erred in granting Mr. McLaughlin's summary judgment motion. Mr. Lyon specifically argues that Mr. McLaughlin performed affirmative negligent acts that bring him outside the exclusivity provisions of the Missouri's Worker's Compensation Act. Mr. McLaughlin argues, however, that any breach of duty would merely be a breach of Hunt Midwest Mining Company's duty to provide a reasonably safe place to work and, hence, he is protected from liability under the Worker's Compensation Act.

An employer has a duty to provide a safe working environment, and this duty is not delegable. *State ex rel. Hartman v. Kintz*, 832 S.W.2d 9, 10 (Mo.App.1992); *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 179 (Mo.App.1982). Section 287.120, RSMo 1994, gives an employer immunity from common law liability for breaches of this duty. § 287.120.1, RSMo 1994; *Hartman*, 832 S.W.2d at 10. This immunity extends to any employee charged with carrying out the employer's duties. *Id.; Badami*, 630 S.W.2d at 180. A co-employee's failure to perform a duty delegated to him by his employer does not give rise to a cause of action by a fellow

employee who is injured because of the failure. *Badami*, 630 S.W.2d at 179.

A co-employee loses this immunity only if he affirmatively causes or increases his fellow employee's risk of injury. *Id*; *McCoy v. Liberty Foundry Co.*, 635 S.W.2d 60, 63 (Mo.App.1982). A petition must charge "something extra," beyond a breach of general supervision and safety for the co-employee to be liable. *Badami*, 630 S.W.2d at 179. The petition must allege "an affirmative negligent ... act [committed by the co-employee] outside the scope of [the employer's] responsibility to provide a safe workplace ..." *Tauchert v. Boatmen's Nat. Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993). Whether a petition charges facts sufficient to establish the requisite "something extra" is determined on a case-by-case basis. *Badami*, 630 S.W.2d at 181.

In cases that have recognized the "something more" element has been met, the supervisor had personally participated in the "something more" by directing the employees to engage in dangerous conditions that a reasonable person would recognize as hazardous and beyond the usual requirements of the employment. *See Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 927 (Mo.App. 1995) (holding supervisor liable where supervisor personally arranged for employee to be dangled from tines of a forklift over a vat of scalding water into which employee fell and died); *Craft v. Scaman*, 715 S.W.2d 531, 537–38 (Mo.App.1986) (holding president of fireworks company personally liable for employee's injuries where president personally held a board directly against spinning spool of fuse to prop it up and the fuse caught fire and burned employee operating the machine); *Workman v. Vader*, 854 S.W.2d 560, 564 (Mo.App.1993) (finding manager could be held liable for negligence in throwing packaging materials on floor and then covering them with slippery cardboard boxes causing plaintiff to slip and fall when she stepped on side of cardboard box); *Tauchert*, 849 S.W.2d at 574 (Mo. banc 1993) (holding foreman liable in negligence where employee was injured when an elevator hoist system that the foreman personally arranged failed).

Analysis of the evidence reveals that Mr. Lyon has failed to establish an issue of material fact as to whether Mr. McLaughlin engaged in the "something more" required by *Badami*. As a supervisor, Mr. McLaughlin had the right to expect that his employees, including Mr. Lyon, would perform the normal duties required in their employment. Mr. Lyon, a maintenance department worker, was responsible for performing necessary maintenance and repair work on all plant equipment at Hunt Midwest Mining. The repair of the conveyer belt that had been stopped by the bent tin cover was, thus, part of the necessary maintenance and repair work that Mr. Lyon was charged with effectuating and that Mr. McLaughlin could justifiably expect Mr. Lyon to perform. Mr. McLaughlin's order to Mr. Lyon to move the bent tin cover from the conveyer belt, therefore, was nothing more than a supervisory direction to an employee to fulfill his job requirements, an order which does not constitute an "affirmative act" outside the scope of the Worker's Compensation Act. Knowledge that Mr. Lyon experienced a back injury approximately five years before the incident does not constitute the "something more" required by *Badami*. Mr. Lyon had returned to work and no claim was made that he was not recovered from the injury and able to perform the duties of his employment, or if he was not, that Mr. McLaughlin was aware of Mr. Lyon's limited duty status. Even if Mr. McLaughlin's direction to Mr. Lyon was negligent given the size and weight of the tin cover, as Mr. Lyon contends, the direction breached nothing more than the general duty an employer owes to his employees to provide a safe work environment and, therefore, fell within the exclusivity provisions of the Worker's Compensation Act. The trial court did not err in granting Mr. McLaughlin summary judgment. Point one is denied.

## II. WHETHER AN ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER MR. DIMARCO MAY BE HELD LIABLE IN NEGLIGENCE

As his second point on appeal, Mr. Lyon argues that Mr. DiMarco, too, performed an affirmative act that placed him

outside the protection of the Worker's Compensation Act. Mr. DiMarco argues, however, that he could not have participated in the "something more" required by *Badami* as he was not present at the time of Mr. Lyon's injury and did not participate in the decision to lift the tin cover from the conveyer.

Mr. Lyon has failed to create a genuine issue of material fact as to Mr. DiMarco's liability. Analysis of the evidence reveals that Mr. DiMarco did not perform any affirmative act that could be construed as negligent. Mr. DiMarco was not present when Mr. Lyon was injured and in no way participated in the decision to lift the tin cover from the conveyer. Furthermore, Mr. DiMarco's responsibilities as safety coordinator did not encompass supervision of Mr. Lyon, the assignment of Mr. Lyon's work duties, overseeing particular jobs on which Mr. Lyon worked, assessment of Mr. Lyon's job performance or what tools Mr. Lyon should use when performing his job responsibilities. Mr. Lyon's allegations that Mr. DiMarco committed "affirmative negligent acts" and "practiced affirmative willful blindness when it came to his duties as safety coordinator" are mere conclusory allegations unsupported by facts. *See Felling v. Ritter*, 876 S.W.2d 2, 4 (Mo.App.1994) (holding that averments that defendants "misresponded," "misinstalled," "misdesigned," "acted intentionally," and with "malfeasance" were mere conclusions not supported by alleged facts and, hence, constituted nothing more than breach of general duty to provide safe work environment). Mr. Lyon's allegations, at most, established that Hunt Midwest Mining Company breached its general duty to provide its employees a reasonably safe work environment. Such allegations fall within the exclusivity provisions of the Missouri Worker's Compensation Act. The trial court, therefore, did not err in granting Mr. DiMarco summary judgment. Point two is denied.

The decision of the circuit court is affirmed.

All concur.