IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 23, 2000 Session

## RONALD E. WALTON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 169648    Douglas A. Meyer, Judge**

---

**No. E1999-01165-CCA-R3-PC**
**December 28, 2000**

---

After a hearing, the petitioner appeals the criminal court's order dismissing his petition for post-conviction relief.  Convicted in 1968 of assault and battery with intent to rape, the petitioner was sentenced to incarceration for ten years.  The petitioner has fully served his sentence in Tennessee.  However, his Tennessee conviction was used to enhance his 1980 conviction of rape in Indiana.  The petitioner proceeds to challenge his Tennessee conviction, in hope of a sentence reduction in Indiana.  After careful review, we affirm the criminal court's dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Philip L. Duval, Chattanooga, Tennessee, for the appellant, Ronald E. Walton.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; William H. Cox III, District Attorney General; and Bates W. Bryan, Jr. and  Rodney C. Strong, Assistant District Attorneys, for the appellee, State of Tennessee.

## OPINION

### Case Chronology

The petitioner was originally indicted twice for the same conduct by a Hamilton County Grand jury on September 11, 1968.  When the petitioner was tried, he was found guilty and sentenced by a jury on October 30, 1968, for assault and battery with intent to rape.

On December 13, 1968, a jury found the petitioner guilty and sentenced him for first degree burglary with intent to rape.  These two cases were then consolidated for direct appeal.

On direct appeal, the Court of Criminal Appeals affirmed the conviction for assault and battery with intent to rape, but reversed and dismissed the first degree burglary with intent to rape on double jeopardy grounds. Walton v. State, 448 S.W.2d 690 (Tenn. Crim. App. 1969). The Supreme Court denied permission to appeal further on December 15, 1969. Walton, 448 S.W.2d 690.

In November 1987, the petitioner filed a pro se petition for post-conviction relief, challenging his 1968 conviction. The petition was summarily dismissed in February 1988. The petitioner subsequently appealed the trial court's dismissal. This Court reversed the trial court and remanded the matter for further proceedings. Ronald E. Walton v. State, Hamilton County, No. 1073 (Tenn. Crim. App., filed February 1, 1989, at Knoxville), perm. to app. denied (Tenn. 1989).

After this Court remanded the case, counsel was appointed in July 1989 and an amended petition was filed. The amended petition alleged that the petitioner received ineffective assistance of counsel at his 1968 trial. Because the petitioner was incarcerated in Indiana, action on the amended post-conviction petition was postponed until his testimony was taken by deposition in October 1998. Three hearings on the amended petition were then conducted: the first in June 1998, the second in November 1998, and the third in June 1999. On June 28, 1999, the trial court denied the petitioner's requested post-conviction relief. It is from this denial that the petitioner now appeals.

In this appeal the petitioner contends that his trial counsel's performance at the 1968 trial was deficient. Specifically, the petitioner alleges that trial counsel's performance was ineffective for the following reasons:

1.  Failure to meet and consult with him adequately;
2.  Lack of effective cross-examination of the victim, specifically as relates to her ability to recognize his voice and her description of the perpetrator's clothing;
3.  Failure to discredit the fingerprints and shoe print evidence discovered at the crime scene;
4.  Failure to call several witnesses that would testify consistent with the petitioner's defense that the victim concocted the assault story to cover her illicit affair;
5.  Failure of counsel to object to the victim's reference of the petitioner's recent release from "Pikeville," a juvenile detention facility; and
6.  Counsel erred in questioning the petitioner about his juvenile record.

The petitioner insists that but for these deficiencies, he would likely have been found not guilty.

The petitioner's 1968 trial counsel also testified at the post-conviction hearing. He remembered very little about the specifics of the 1968 trial. He began practicing law in Chattanooga in August 1968 and this trial occurred in October 1968. This case was one of his first criminal trials.

The following recitation of facts is from the opinion of this Court on direct appeal from the petitioner's conviction:

-2-

In the instant case Carolyn Few testified that she was in her home alone and asleep during the night of July 21, 1968. She had just been married four months and her husband was at work, on the third shift. She stated that she was awakened at about four o'clock in the morning, that the defendant was in her bedroom, that he jumped on top of her and put his hands around her throat and told her that if she screamed he would kill her. She continued her testimony by saying that she told the defendant that she was in her menstrual period and that she would have to wash up. The defendant let her go into her bathroom, and she filled the basin with hot water, soaked a wash rag in it, and when the defendant came into the bathroom she hit him in the face with the hot rag, screamed and ran out the back door for help. She testified that she could see and recognize the defendant, that she had known him for about five years because he ran around with her brother.

Carolyn Few testified that she could see the defendant clearly, that her bedroom is illuminated by a street light outside, and that this light shone on his face.

It is clear from this record that Carolyn Few knew the defendant for several years prior to this crime, that she had known that he was a friend of her brother's, and that she had seen him frequently. It is also clear that she did not know his name, and for this reason, on cross examination, her testimony was at times vague on the question of whether she knew the defendant. There is absolutely no question in our opinion that she did know the defendant, and that she identified him as her assailant, but she was not sure of his name until she asked her brother.

Defendant's witnesses who attempted to establish an alibi in his behalf were all members of his family. They testified that the defendant was at home and in bed at times before and after this crime, but none of them testified that he was at some other place than the home of Mrs. Few at the time she says she was assaulted.

Upon a review of the entire record it is clear that the defendant has failed to carry the burden of demonstrating here that the evidence preponderates against the verdict of the jury and in favor of his innocence.

Walton v. State, 448 S.W.2d 690, 694-95 (Tenn. Crim. App. 1969).

After conducting the post-conviction relief hearing, the trial court, in its Order Denying Petition for Post-Conviction Relief, set out several pertinent findings. These findings include:

(1) The petitioner failed to prove that his constitutional rights were violated by ineffective assistance of counsel.

(2) The trial attorney chose not to vigorously cross-exam the victim about her identification of petitioner. To have done so, may very well have strengthened her testimony. She had known petitioner about five years. He ran around with her brother and had been to their home. She very well could have recognized his voice and his face and needed help in remembering "Lebron's brother's name."

He did question the victim as to whether she had been to a party that evening, had men over while her husband was at work, knew Percy Blocker or Jimmy Green, and whether she had had a fight with one of her lovers that night. And although questions attorneys ask are not evidence, he did manage to plant that "seed" of doubt in jurors' minds.

He may not have subpoenaed Lindsay, Blocker and Green, because he would not be sure what their testimony would be, unless they voluntarily came to court to tell it. Even if Blocker had come to court, his testimony about being sexually involved with the victim, would probably not have been permitted.

(3) Trial attorney did not need an expert witness about the latent fingerprints. Detective Gilliland testified that they were not petitioner's.

Obviously, the trial attorney knew what Gilliland would testify to, he called him as a witness, not the State. His cross-exam of the victim and other witnesses indicated he knew before what their testimony would be. The prosecutor, in his closing summation, said, "Mr. Carpenter worked very hard on this case. Exerted all efforts to give Walton a good defense." The trial attorney had obtained discovery by talking to the prosecutor to find out what the State's proof would be.

(4) The one glaring mistake the trial lawyer made was asking petitioner about his juvenile record. Some attorneys feel it is better to bring out on direct a defendant's record, but that is only if the State is going to be able to do it on cross-examination. In this case, the State could not have asked petitioner about his juvenile record. Petitioner's answer "two counts of robbery, and one time a burglary" was extremely prejudicial to petitioner.

But, petitioner was not entitled to a perfect trial. Trial counsel performed as well as a lawyer with ordinary training and skill in criminal law would and his service was within the range of competence demanded by attorneys in criminal cases. But even if he did not, there is no showing of any reasonable probability that petitioner would not have been found guilty.

**Analysis**

This Court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. See Strickland v. Washington, 104 S.Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To demonstrate prejudice, a defendant or petitioner must show that there is a reasonable probability that but for counsel's error, the result of the proceeding would have been different.

The test in Tennessee for determining whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. See Strickland, 104 S.Ct. at 2065; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998), Alley v. State, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997). Therefore, in order to prove deficiency, petitioner must show that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms. See Strickland,104 S.Ct. at 2065; Henley v. State, 960 S.W.2d 522, 579 (Tenn. 1997); Goad, 938 S.W.2d at 369.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 104 S.Ct. at 2065. The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices apply only if the choices are informed ones based upon adequate preparation. See Goad, 938 S.W.2d at 369; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Alley, 958 S.W.2d at 149; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Further, because the petitioner's case was filed in 1987, the petitioner has the burden of proving his case by a preponderance of evidence. See Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

Finally, the trial judge's findings of fact in post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. See Butler, 789 S.W.2d at 899; Adkins v. State, 911 S.W.2d 334, 341 (Tenn. Crim. App. 1995). In fact, the trial court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by the findings unless the evidence in the record preponderates against them. See Henley, 960 S.W.2d at 578. That burden lies with the petitioner. See Id. at 579.

Based upon our de novo review of the entire record and the findings of the post-conviction court, we conclude that the evidence does not preponderate against the trial court's finding.

The petitioner failed to carry his burden on the issue of trial counsel failing to meet or consult with him adequately. The record reveals that counsel was prepared to cross-examine key witnesses, develop defenses, and call witnesses that possessed favorable testimony for the petitioner.

-5-

The petitioner contends that there was a lack of effective cross-examination of the victim and a failure to discredit the fingerprint and shoe print evidence discovered at the crime scene. After reviewing the record, we conclude that the evidence does not preponderate against the post-conviction court's finding of effective assistance of counsel. Although cross-examination of the victim may have strengthened the victim's testimony about her identification of the defendant, trial counsel's abandonment of more strenuous cross-examination was a tactical decision that we will not second guess. The record reveals that trial counsel effectively discredited the fingerprint and shoe print evidence, and that there was no need for additional expert testimony on this issue.

The petitioner next claims that trial counsel was ineffective for asking the petitioner about his juvenile record. After reviewing that claim, we conclude that the evidence does not show a likelihood that the defendant would not have been convicted but for this prejudicial evidence. It is clear that such evidence would not have been admitted upon cross-examination by the State. However, given the clear evidence of guilt at trial, we find that it was harmless error. See, e.g., State v. McGhee, No. 85-241-III (Tenn. Crim. App. Filed on Nov. 28, 1986, at Nashville).

## CONCLUSION

After careful review, we affirm the post-conviction court's denial of the petitioner's claim for post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE